WINDOW ROCK DISTRICT COURT

November 4, 1983

No. WR-CV-21-83

THE NAVAJO NATION, ex rel.
DIVISION OF SOCIAL WELFARE,

IN THE MATTER OF THE INTEREST OF:
J.J.S., A Minor.

Honorable Tom Tso, Judge presiding.


## STATEMENT OF THE CASE

This is a case involving a minor child who is seriously neglected by his mother. The father of the child is unknown. As a result of the mother's severe neglect of the child her parental rights have been terminated pursuant to law. Upon termination of parental rights the natural mother expressed her desire that her child be adopted by Mr. and Mrs. Dan and Helen Chee.

A petition for adoption is also pending before this court on the above named minor child filed by Mr. and Mrs. Johnny and Patricia Stephens. Mr. and Mrs. Stephens are not members of the Navajo Tribe.

The social workers submitted an excellent home investigation report and recommendation. They have determined that both families are fit to raise the minor child. Mrs. Chee is a counsin to the child's natural mother and therefore a member of the extended family of the natural mother and resides in Pine Dale, New Mexico within the jurisdiction of the Navajo Nation.

The Court is confronted with the issue as to who should be appointed adoptive parents of this minor child since the two couples petitioning to adopt the child are both fit.


## APPLICABLE LAW

The first thing this court must do is find which law applies in this case.

The trial court of the Navajo Nation has original jurisdiction over all cases involving the domestic relation of Indians, such as divorces, or adoption matters. 9 NTC Section 1001, et. seq.

The Navajo Tribal Code gives the Court a choice of law to use in a given case.

7 NTC Section 204, Law Applicable In Civil Actions,

a. In all civil cases the Courts of the Navajo Tribe shall apply any laws of the United States that may be applicable, any autho-rized regulations of the Interior Department, and any ordinances or custom of the Tribe not prohibited by such federal laws.

The law is very clear if there is an applicable custom of the Tribe not prohibited by federal laws then the court can apply those customs including any ordinances of the Navajo Tribe.

## NAVAJO COMMON LAW DEFINED

This Court in its decision in the case of the Estate of Apache, WR-CV-197-82, 1983, Window Rock District Court. Pronounced its preference for the term "Navajo Common Law" rather than "custom" for the reason that it is not widely understood that the customs and tradition of the Navajo people are law, and the English term is used because it more accurately reflects our custom as law. The word "custom" for the purpose of the statute not only includes customs which may be testified to, noticed, proved by expert testimony or otherwise shown by evidence, but it includes recorded opinions and decisions of the Navajo Courts (not dealing with statutory interpretation or the application of principles of state or general Anglo-European Law), and some learned treatises on Navajo ways, Id.

## AMERICAN LAW ON ADOPTION

There are laws of the United States which this court can use in ruling on this case including the Indian Child Welfare Act, (1978). This court can apply those federal laws in absence of a Navajo Custom which is not prohibited by federal law. Fortunately, there is a Navajo custom that this court is aware of and can apply in deciding the issue in this case.

Adoption is a legal process by which the law makes a substitution of parents for a child and terminates the parent and child bond with the natural parents, at least legally speaking. The adoption process requires the termination of the legal bond with the natural parents because of the idea that there can only be one parent and child relationship at any one time. Clark, The Law of Domestic Relations in United States, Section 18.1, P. 602, (1968).

An important point about Anglo-European adoption law is that it is a law which is created only by statute, and it did not come to the United States Courts through the English common or customary law. Id. at P. 603. As a result, the current American Law of Adoption is recent and a product of modern American attitudes. There has also been a history of hostility towards the law of adoption in American Courts, possibly due to the fact that it was not created over a long period of time by the courts to fit the needs of those who have come before them. Id.

## NAVAJO COMMON LAW ON ADOPTION

The American Law of Adoption thinks in terms of duties. Natural parents have duties towards their children, and when those duties are breached, then the law will take the children away from the natural parents and give them to other parents. Navajo concepts are different and the following description has been made of Navajo legal attitudes towards family relationship.

"Navajos believe that each person has a right to speak for oneself and to act as one pleases. The mutual rights and duties of kinsmen normally discussed under the concept of the jural relations are best described as mutual expectations, rather than obligations. This distinction is a matter of emphasis and decreeing, but it is very real and worth nothing. Desirable actions on the part of others are hoped for and even expected, but they are not required or demanded. Coercion is always deplored." Witherspoon Navajo Kinship and Marriage, pages 94-95, (1975).

Therefore, the Navajo view of the relationship of children to parents is not one of a simple parent and child relationship, but an entire pattern of expectation and desirable action surrounding children. Opinion of Court Solicitor, 83-10 (1983).

A central concept of child rearing in Navajo society should be grasped before there is any discussion of the Navajo Common Law of Adoption. One description of that concept is:

"The Navajo people identify themselves as 'Dine', which means the people. The term is simply an expression of native pride or a message that conveys many things which are central in native feelings. One of the most important societal values included in this natural native feeling is the attitude towards children, they are highly valued and wanted. The basis for the Navajo life ethics was that the original parents of the first human infant pronounced a death penalty on any creator or being who mistreated the first child. This act or behavior would devalue or humiliate the supernaturals with whom the first human baby was identified. Therefore, in the Navajo religious context inhumane cruelty to children was prohibited." Navajo Child Rearing Concept, Child Abuse and Neglect - A Navajo Prospective, Navajo Children's Legal Services, Draft Section Of A Manuel For Use In Child Welfare Services, (1983).

The Navajo Common Law principles of the expectation that children are to be taken care of and that obligation is not simply one of the child's parents. The Navajos have very strong family ties and clan ties.

The term adoption is used by Navajo commentators on Navajo Common Law but it is used in a different sense than that used in Anglo-European adoption statutes:

"Orphans of Navajo families or children of large families or broken homes are adopted by other family members or a family member of the same clan as the child." Carl N. Gorman, The Navajo Nation Is Made Up Of Many Conference, (1980); Published in Dine' Center For Human Development For Generations To Come, (1982).

Many Navajo adoptions have a different focus than Anglo-European law. As such, it is not principally concerned with the exchange of legal parents.

"Navajo adoption is based on need, mutual love and help. Children may or may not change the surname. Either way the family is a unit with strong, supportive, extended family and clan ties. It has worked for hundreds of years without adoption agencies and courts of law." Id.

Another distinctive aspect of Navajo adoption is that it is not necessarily permanent.

"Adoption is merely a case of taking the children into the home for a limited time, or permanently, by extending family or parental agreement, depending on the circumstances. The child is raised and treated as ones own. Grandparents are sometimes the ones to take in and raise the young children belonging by birth to their own deceased or unwed children or other related family members. Id. In Navajo Common Law a child is said to be born for his father's clan and a member of his mother's clan. This means that the child is an integeral part of a functioning self-reinforcing and protecting group. Anglo-European law is primarily concerned with immediate parent and child relationship while Navajo Law is concerned with the relationship of a child to a group which shares the expectation that its members will take care of each other's children." Court Solicitor's Opinion, 83-10, (1983).

The correct statement of the Navajo Common Law of adoption is that there is an obligation in family members, usually aunts or grand-parents or a family member, who are best suited to assist the child to support and assist children in need by taking care of them for such periods of time as are necessary under the circumstances, or perman-ently in the case of a permanent tragedy effecting the parents. The Navajo Common Law is not concerned with the termination of parental rights or creating a legalistic parent and child relationship because those concepts are irrelevent in a system which has obligation to child-ren that extends beyond the parents. Therefore, upon the inability of the parents to assist a child or following the occurence of a family tragedy, children are adopted by family members for care which maybe temporary or permanent, depending upon the circumstances. The mechanism is informal and practical and based upon community expecta-tion founded in religious and cultural belief. Opinion of the Solicitor to the Courts of the Navajo Nation, No. 83-10, September 9, 1983.

## NAVAJO STATUTES ON ADOPTION

The Navajo Tribal Council is presumed to have had the common law as discussed above in mind when it enacted the following statutes recited in the Opinion and Order of this Court, In the Matter of the Estate of Boyd Apache, Cause No. WR-CV-197-83, October 11, 1983, (Citation omitted.):

1. 9 NTC Section 1256, states that after terminating the rights of parents, the court may place the child for adoption under applicable laws and regulations. (Emphasis added).

2.   .9 NTC Section 1192, states: "In placing the child under the guardianship or legal custody of an individual or of a private agency or institution, the court shall give primary consideration to the welfare of the child but, whenever practical, may take into consideration the religious preferences of the child and of his parent."

3.   9 NTC Section 1001 states that family ties should be preserved and strengthened whenver possible.

4.   9 NTC Section 1197 states that the court may make any other reasonable orders which are for the best interests of the child or are required for the protection of the public.

5.   9 NTC Section 615 expresses the policy of the Navajo Tribe in regards to the adoption of Navajo children, to wit:

> (a) The Navajo Tribal Council favors the formal adoption of Navajo children in accordance with the provisions of this chapter in all cases where the parents of such children are dead, or where such children are regularly and continously neglected by their parents, or where the parents have abandoned such children.  The Tribal Council looks with disfavor upon informal arrangements for the custody of such children except for temporary periods pending their formal adoption.  (b) In the case referred to in subsection (a) of this section the Navajo Tribe neither favors nor disfavors adoption of Navajo children by parents who are not members of the Navajo Tribe but states as its policy that each case shall be considered individually or on its own merits by the Tribal Court of the Navajo Tribe.

## CONCLUSION

In conclusion, the court rules that an extended family member of the child and the natural mother has stepped forth and recognized and assumed her responsibility and obligation to care for a child who is severely neglected by the natural mother.  The Social Services report as well as testimonies at trial also reveal that the home is a fit and appropriate place for the child to be raised and that it is in accordance with the Navajo Common Law and therefore it should grant adoption to that member of the extended family.  A Findings of Fact and an Order to this effect will follow forthwith, which is incorporated into this Opinion by reference.

SO ORDERED.